IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| SHANNON N. BUTRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:23-cv-884-HEH |
| ) | |
| DINÉ DEVELOPMENT ) | |
| CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**
**(Granting Defendants' Motion to Dismiss)**

THIS MATTER is before the Court on Defendants Diné Development Corporation ("Diné" or "DDC") and Sarah Young's ("Young"), in her official capacity, (collectively, "Defendants") Motion to Dismiss (the "Motion," ECF No. 6), filed on March 18, 2024. Defendants seek to dismiss Plaintiff Shannon N. Butrick's ("Plaintiff") Complaint (ECF No. 1) for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Mot. at 1.) The parties filed memoranda supporting their respective positions, including supplemental briefing pursuant to the Court's Order (ECF No. 16), and the Court heard oral argument on July 10, 2024. At the hearing, the Court granted Defendants' Motion for the reasons articulated below. (Minute Entry at 1, ECF No. 23.)

**I. BACKGROUND**

On August 3, 2020, Plaintiff was hired as a Contracts Administrator for Diné, a wholly owned corporation of the Navajo Nation that provides various professional

services to governmental and commercial organizations. (Compl. ¶¶ 2, 6.) Diné's primary place of business is Arizona, but Plaintiff worked remotely from her home in Virginia. (*Id.* ¶¶ 2, 7.) Young is the Director of Contracts for Diné and acted as Plaintiff's supervisor throughout most of her employment. (*Id.* ¶¶ 3, 6.)

Plaintiff began maternity leave on March 7, 2023, and returned to work on May 30, 2023. (*Id.* ¶ 8.) On July 21, 2023, Plaintiff was placed on a Performance Improvement Plan ("PIP") by her supervisor, Alexandria Schlorman ("Schlorman"). (*Id.* ¶¶ 6, 12.) Prior to her placement on the PIP, Plaintiff had received awards, positive performance reviews, and meritorious pay increases over the course of her employment. (*Id.* ¶ 14.) Plaintiff complained that she was placed on the PIP in retaliation for taking maternity leave. (*Id.* ¶ 13.) On August 17, 2023, Plaintiff requested to take off work between August 22–25, and Schlorman approved the request. (*Id.* ¶ 15.) However, on August 19, 2023, Defendants terminated Plaintiff's employment, "due to inefficiencies with [her] performance and impacts on the business operations." (*Id.* ¶ 16.)

Plaintiff alleges that Defendants violated the Family and Medical Leave Act ("FMLA") by interfering with her right to take maternity leave. (*Id.* ¶¶ 17–18 (citing 29 U.S.C. §§ 2615(a)(1)–(2)).) Plaintiff believes that these violations began when Defendants reduced her work responsibilities and transferred an employee she supervised while Plaintiff was on maternity leave. (*Id.* ¶ 9.) Plaintiff further alleges that Diné denied her accommodation request that remote meetings and calls be scheduled around her breast milk-pumping schedule. (*Id.* ¶ 11.) Instead, Defendants required her to attend in-person meetings over 100 miles away, despite being hired as a remote employee with

2

minimal travel required. (*Id.*) Plaintiff believes that it was Young, her former supervisor, who made the decision to place her on the PIP for reasons that were "false and/or exaggerated, and thus pretextual." (*Id.* ¶ 19.)

Plaintiff brings two (2) counts against Defendants: (1) Interference with Exercise of Leave Rights Under FMLA, and (2) Retaliation for Complaining of Discrimination Under FMLA. (*Id.* at 6.) Plaintiff requests reinstatement and monetary damages of $500,000.00. (*Id.*)

## II. LEGAL STANDARD

A Rule 12(b)(1) motion challenges the Court's jurisdiction over the subject matter of a complaint. Such a challenge can be facial, asserting that the facts as pled fail to establish jurisdiction, or factual, disputing the pleadings themselves and arguing that other facts demonstrate that no jurisdiction exists. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). For a facial challenge, "the plaintiff is 'afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration.'" *Id.* (quoting *Kerns*, 585 F.3d at 192). Accordingly, a plaintiff's well-pleaded factual allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). However, a court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

3

"Suits against Indian tribes are [] barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991). In the absence of waiver or abrogation, the Court lacks subject matter jurisdiction. *See Hengle v. Treppa*, 19 F.4th 324, 348 (4th Cir. 2021).

For a Rule 12(b)(1) motion, courts may consider documents that are either "explicitly incorporated into the complaint by reference" or "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). A court may consider a document not attached to the complaint, when "the document [is] integral to the complaint and there is no dispute about the document's authenticity." *Id.* "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . ., the exhibit prevails." *Id.* (quoting *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)) (internal quotations omitted) (alteration in original).

### III. ANALYSIS

Plaintiff concedes that Defendants are an arm of the Navajo Nation and ordinarily entitled to sovereign immunity. (Pl.'s Resp. in Opp'n at 3, ECF No. 12); *see also Applied Scis. & Info. Sys., Inc. v. DDC Constr. Srvs., LLC*, No. 2:19-cv-575, 2020 WL 2738243, at *2–4 (E.D. Va. Mar. 30, 2020) (finding DDC is entitled to immunity as an arm of the Navajo Nation tribe). The parties diverge on whether Congress abrogated tribal immunity in enacting the FMLA.

4

### A. Congressional Abrogation of Tribal Immunity in the FMLA

Plaintiff acknowledges the FMLA is silent about tribal immunity. (Pl.'s Resp. in Opp'n at 5.) Yet it is the statute's silence, Plaintiff argues, that marks it as generally applicable to everyone—and therefore applicable to Indian tribes. (*See id.* (citing *Fed. Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 120 (1960) ("[G]eneral Acts of Congress apply to Indians as well as to all others in the absence of a clear expression to the contrary . . . .")).) The FMLA prohibits "any employer" from interfering with the exercise of leave rights, 29 U.S.C. § 2615(a), and, unlike other statutes, the Act defines employer broadly, 29 U.S.C. § 2611(4)(A). Accordingly, Plaintiff contends that "in the absence of language carving out an exemption for Indian tribes, tribal owned businesses are no different than any other business in the United States and must honor the leave entitlements of eligible employees." (Pl.'s Resp. in Opp'n at 5.)

Defendants aptly note that Plaintiff's reliance on *Federal Power Commission* is misplaced. (Defs.' Reply at 2, ECF No. 13 ("Whether the FMLA applies to DDC has no bearing on whether DDC's sovereign immunity bars Butrick's claims.").) "[W]hether an Indian tribe is *subject* to a statute and whether the tribe may be *sued* for violating the statute are two entirely different questions." *Fla. Paraplegic, Ass'n v. Miccosukee Tribe of Indians of Fla.*, 166 F.3d 1126, 1130 (11th Cir. 1999) (emphasis in original). While a federal law may be generally applicable to an Indian tribe based on Congressional silence, silence is not sufficient to afford a private party with a remedy— "[t]here is a difference between the right to demand compliance with state laws and the means

5

available to enforce them."[1] *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 755 (1998). The Supreme Court has often held the initial presumption is that tribal immunity applies, and to "abrogate [such] immunity, Congress must 'unequivocally' express" its intent to do so. *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 790 (2014) (quoting *C & L Enterprises, Inc. v. Citizen Band Potawatomi Tribe of Okla.*, 532 U.S. 411, 418 (2001)). Courts should "not lightly assume that Congress in fact intends to undermine Indian self-government." *Id.* To determine whether Congress unequivocally abrogated tribal immunity in the FMLA, the Court must look to the text of the statute. *Id.* ("This Court has no roving license, in even ordinary cases of statutory interpretation, to disregard clear language simply on the view that . . . Congress 'must have intended' something broader.") Assuming that Indian tribes *are* subject to the FMLA, the Act's silence regarding Indian tribes cannot unequivocally abrogate tribal immunity.[2]

As Plaintiff readily admits, the FMLA contains no mention or reference to Indian tribes. Congress knows, and often does, expressly indicate whether a statute abrogates immunity. *See, e.g.*, Resource Conservation and Recovery Act of 1976 ("RCRA"), 42

---

[1] This is not to say that Plaintiff may have *no* means of recourse if the FMLA does not apply to Indian tribes. The Secretary of Labor is always capable of bringing suit for violations of the statute. 29 U.S.C. § 2617(b); *see Fla. Paraplegic*, 166 F.3d at 1134–35 ("As we held in Part III.A, *supra*, Title III applies to Indian tribes; moreover, "[t]ribal sovereign immunity does not bar suits by the United States." (quoting *Reich v. Mashantucket Sand & Gravel*, 95 F.3d 174, 182 (2d Cir. 1996))).

[2] The Court need not address whether the FMLA, as a statute of general applicability, applies to Indian tribes. The Court does note, however, that courts have not uniformly held that generally applicable laws necessarily apply to Indian tribes. *See, e.g.*, *E.E.O.C. v. Cherokee Nation*, 871 F.2d 937, 938 (10th Cir. 1989) (holding ADEA is not applicable).

6

U.S.C. § 6903(13) (defining "municipality" to include "an Indian tribe or authorized tribal organization"). Plaintiff does not identify any court that has held the FMLA unequivocally abrogates tribal immunity.[3] On the contrary, while the Fourth Circuit has not yet weighed in on the question, courts elsewhere have uniformly held the FMLA does *not* abrogate Tribal immunity. *See Carsten v. Inter-Tribal Council of Nevada*, 599 F. App'x 659, 660 (9th Cir. 2015) ("The district court correctly held that the FMLA does not abrogate tribal sovereign immunity."); *Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004) ("[N]either abrogation nor waiver has occurred in this case. The FMLA makes no reference to the 'amenity of Indian tribes to suit.'" (citation omitted)), *cert. denied*, 543 U.S. 966 (2004). The Court joins those circuits in holding that Congress did not unequivocally abrogate tribal immunity under the FMLA.

Plaintiff suggests an alternative avenue for the Court to find an abrogation of sovereign immunity after the Supreme Court's decision in *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382. In *Coughlin*, the Court held that by broadly defining "governmental unit" in the Bankruptcy Code, "Congress unmistakably intended to cover all governments in § 101(27)'s definition, whatever their location, nature, or type." *Id.* at 390. The consequence of Congress's decision was the

---

[3] Plaintiff points to *Pearson v. Chugach Government Services, Inc.* from the District of Delaware for support, but *Pearson* is distinguishable. (Pl.'s Resp. in Opp'n at 6); 669 F. Supp. 2d 467 (D. Del. 2009). *Pearson* concerned an Alaskan Native Corporation, an entity the Fourth Circuit has held are "not comparable sovereign entities." *Aleman v. Chugach Support Srvs., Inc.*, 485 F.3d 206, 213 (4th Cir. 2007). The Court in *Pearson* even noted, "The only courts to examine whether tribal organizations are subject to the FMLA's employer obligations held, based on the doctrine of tribal immunity, [that] there is not private cause of action under the FMLA against tribal organizations." *Pearson*, 669 F. Supp. 2d at 477.

7

abrogation of tribal immunity. Following the Court's reasoning, Plaintiff argues that Congress's broad definition of "public agency" in the FMLA, 29 U.S.C. § 203(x), which is borrowed from the Fair Labor Standards Act, expresses a similar intent to abrogate tribal immunity. (Pl.'s Suppl. Br. at 4, ECF No. 19.) This Court disagrees.

In *Coughlin*, the Supreme Court noted that Congress defined "governmental unit" expansively, and concluded the definition "with a broad catchall phrase, sweeping in 'other foreign or domestic government[s].'" *Coughlin*, 599 U.S. at 389–90 (quoting 11 U.S.C. § 101(27)). In the FMLA, "public agency" is not defined expansively and nor does it contain a broad catchall phrase. Instead, § 203(x) specifically identifies only "the Government of the United States; the government of a State" and the political subdivisions and agencies thereof. Moreover, at least one court has held that the FLSA's definition of "public agency," which the FMLA borrows, does not expressly abrogate tribal immunity. *Larimer v. Konocti Vista Casino Resort, Marina & RV Park*, 814 F. Supp. 2d 952, 956–57 (N.D. Cal. 2011). Consequently, tribal immunity applies absent waiver by DDC or the Navajo Nation.

### B. Waiver of Sovereign Immunity–DDC Employee Handbook

Plaintiff contends that even if Defendants are entitled to sovereign immunity, DDC expressly waived immunity. (Pl.'s Suppl. at 2.) The Employee Handbook states:

> Although the Company has sovereign immunity, the Company voluntarily complies with the federal Family and Medical Leave Act (FMLA), which requires employers to grant unpaid leaves of absence to qualified workers for certain medical and family related reasons. The Company also abides by any state and local leave laws. The more generous of the laws will apply to the employee if the employee is eligible under both federal and state laws.

(DDC Employee Handbook at 26–27, ECF No. 24.)[4] Voluntary compliance with the FMLA, Plaintiff argues, constitutes waiver of sovereign immunity as it pertains to enforcing the FMLA. (Pl.'s Suppl. at 2.)

Conversely, Defendants argue that Plaintiff's position is untenable when assessing the Handbook as a whole. (Defs.' Mem. in Supp. of Mot. for Leave at 2–3, ECF No. 21.) The first numbered page of the Handbook reads: "DDC IS AN INSTRUMENTALITY OF THE NAVAJO NATION AND IS ENTITLED TO SOVEREIGN IMMUNITY. NOTHING IN THIS HANDBOOK IS INTENDED TO BE, OR SHALL BE, INTERPRETED AS A WAIVER OF THE SOVEREIGN IMMUNITY OF DDC OR ITS SUBSIDIARY LIMITED LIABILITY COMPANIES FOR ANY PURPOSE." (DDC Employee Handbook at 1 (emphasis in original).) In light of this clause, Plaintiff counters that the Court should read the specific waiver of immunity to trump the general assertion of immunity.

While the Fourth Circuit has not addressed waiver of tribal immunity, other Circuits have established guidelines instructive for a court considering whether an Indian tribe has chosen to waive tribal immunity. *See Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 86 (2d Cir. 2001). Analogous to waiver of immunity by states, "courts consistently have applied two complementary principles to waivers: (1) a sovereign's waiver must be unambiguous, and (2) a sovereign's interest "'encompasses not merely

---

[4] Both Plaintiff and Defendants filed copies of the Employee Handbook. Because Defendants submitted a copy of the whole Handbook, as opposed to the excerpts Plaintiff provided, and no party has disputed the authenticity of the copies, the Court will utilize the full Handbook. Citations will reflect the pagination contained within the Handbook.

9

*whether* it may be sued, but *where* it may be sued.'" *Id.* (emphasis in the original) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1016 (9th Cir. 2016) ("It is well settled that a waiver of [tribal] sovereign immunity cannot be implied but must be unequivocally expressed." (quotations omitted) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). Furthermore, as the Court mentioned in its earlier discussion, a law's mere applicability to Indian tribes does not necessarily confer the ability to remedy violations of that law. *See Kiowa Tribe of Oklahoma*, 523 U.S. at 755. Just as any entity may voluntarily comply with the law of any jurisdiction, an Indian tribe's voluntary compliance with a law does not automatically waive sovereign immunity or provide a cause of action beyond the remedies available to any party to a contract.[5]

Here, the Navajo Nation's putative waiver is not expressly waived. First, even if the Court were to read DDC's voluntary compliance as a waiver of immunity, which the Court does not, the two provisions, one explicitly invokes sovereign immunity and the other impliedly waiving immunity, are at best contradictory. Second, nowhere in the Handbook does DDC identify where a lawsuit should take place. Consequently, the Court declines to read into the Handbook any waiver of tribal sovereign immunity absent further language unequivocally waiving immunity.

---

[5] This is not to suggest that Plaintiff has a breach of contract claim. The Handbook explicitly disavows any such claim and such a claim is wholly dependent on the language of the contract itself. (DDC Employee Handbook at 1 ("This handbook and the Company's policies are not intended to constitute a contract of employment, either express or implied, between you and the Company. Accordingly, this handbook shall not and should not be interpreted or construed as an employment contract, either express or implied, between you and the Company.").)

10

## C. *Ex Parte Young*

Finally, Plaintiff asserts that regardless of sovereign immunity, she should be entitled to pursue injunctive relief against Defendant Young under *Ex Parte Young*. (Pl.'s Resp. in Opp'n at 6.) Defendants counter that because Young was sued in her official capacity, she enjoys sovereign immunity against suit under *Ex Parte Young*.

"In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017). Ordinarily, sovereign immunity blocks claims against the sovereign, but in *Ex Parte Young*, the Supreme Court carved out an exception to this general rule. 209 U.S. 123, 159 (1908). This exception "allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their *official capacities* from *engaging in future conduct* that would violate the Constitution or a federal statute." *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002) (emphasis added) (citing *Ex Parte Young*, 209 U.S. at 159; *Green v. Mansour*, 474 U.S. 64, 68 (1985)). The *Ex Parte Young* doctrine also applies to tribal sovereign immunity. *Hengle*, 19 F.4th at 348 ("*Ex parte Young*-style claims do not accomplish an extra-congressional abrogation of tribal immunity but rather present a long-recognized *exception* to sovereign immunity." (emphasis in original)). Injunctive relief under *Ex Parte Young* must be both (1) prospective and (2) relief from an ongoing violation of federal law. *Indus. Srvs. Grp. v. Dobson*, 68 F.4th 155, 163 (4th Cir. 2023). The issue is whether Plaintiff does so here.

In the two sentences Plaintiff devotes to her argument, she contends that by seeking reinstatement of her employment, she pursues a claim for prospective injunctive

11

relief remedying an ongoing violation of federal law. (Compl. ¶ 3; Pl.'s Resp. in Opp'n at 6.) The Court disagrees. The FMLA permits a civil action by employees to obtain "equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). While reinstatement is clearly a form of equitable relief, it is unclear whether an action for reinstatement remedies an ongoing violation of federal law. *See Morrison v. Viejas Enters.*, No. 11cv97 WQH (BGS), 2011 WL 3203107, at *4 (S.D. Cal. July 26, 2011) (holding that the plaintiff did not "request[] any injunctive or declaratory relief against an agency officer in his official capacity" despite requesting reinstatement). Plaintiff directs the Court to the Second Circuit's decision in *Chayoon* where the court left open the possibility that the plaintiff could pursue injunctive or declaratory relief against the Indian tribe under the FMLA.[6] *Chayoon*, 355 F.3d at 142. The Court does not dispute that injunctive relief under *Ex Parte Young* is *theoretically* available—whether it is *actually* available here is a separate question.

"[A] court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (cleaned up). Reinstatement is prospective. *See Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). However, the reinstatement requested here does not

---

[6] Note the Second Circuit in *Chayoon* did not address whether the FMLA was in fact applicable against Indian tribes. Thus, the question of applicability, which the Court does not resolve here, would also have to be answered in the affirmative for Plaintiffs to succeed on a claim under *Ex Parte Young*. *See supra* Section III.A.

12

remedy any ongoing violation of federal law. Viewing the Complaint as true and assuming the FMLA applies to Defendants, Defendants violated federal law the moment they interfered with Plaintiff's rights under the FMLA—i.e., the moment Defendants "reduced Plaintiff's employment responsibilities, hired her replacement, and ultimately terminated her employment." (Compl. ¶ 17); *see* 29 U.S.C. § 2615(a)(1). The last point in time that Defendants violated federal law was August 19, 2023, when Plaintiff's employment was terminated. (Compl. ¶ 16.) While the effects of this violation may still linger—as they do with most injuries—Plaintiff fails to demonstrate a *continuing* violation of federal law that would warrant injunctive relief. Additionally, Plaintiff fails to offer any case law that states otherwise. Accordingly, Plaintiff's equitable claim for reinstatement cannot be construed as viable relief under *Ex Parte Young* and therefore cannot overcome the Navajo Nation's sovereign immunity.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion (ECF No. 6) will be granted. Counts I and II will be dismissed without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: October 30, 2024
Richmond, Virginia

13